UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LUCKEY FARMERS, INC. | : | |
| 1200 West Main St. | : | |
| P.O. Box 217 | : | |
| Woodville, Ohio 43469 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:23-cv-144 |
| | : | |
| GLENN BERRY | : | Judge |
| 3960 Main Street Rd. | : | |
| Sterling, Michigan 48659 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

Now comes Plaintiff Luckey Farmers, Inc. ("Plaintiff"), by and through counsel, for its Complaint against Defendant Glenn Berry ("Defendant"), and states and alleges as follows:

**JURISDICTION**

1. Plaintiff Luckey Farmers, Inc ("Plaintiff") is an Ohio cooperative association under Chapter 1729 of the Ohio Revised Code, having its principal place of business located at 1200 West Main Street, Woodville, Ohio 43469.

2. Defendant Glenn Berry is a resident of the State of Michigan with an address of 3960 Main Street Rd., Sterling, Michigan 48659.

1

3. Diversity of citizenship exists for purposes of subject matter jurisdiction in this Court and the amount in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

## FACTS COMMON TO ALL CLAIMS

4. On or about June 30, 2020, Defendant entered into Contract 11114, a 10,000-bushel corn contract, with IDA Farmers Cooperative ("IDA Farmers"), a cooperative located in Ida, Michigan.

5. Contract 11114 set forth a delivery period of September 15, 2021 through November 30, 2021.

6. IDA Farmers sent Defendant a confirmation for Contract 11114, which was signed and returned. (IDA Contract 11114, attached hereto as Exhibit A.)

7. As executed, Contract 11114 contained an Agrivisor addendum that could result in a doubling up of deliverable bushels from 10,000 to 20,000 bushels if certain market pricing points were triggered. (Exhibit A.)

8. On or about September 14, 2020, Defendant entered into Contract 11218 with IDA Farmers, which was a 2,500-bushel soybean contract.

9. Contract 11218 set forth a delivery period of September 15, 2021 through November 30, 2021.

10. IDA Farmers sent Defendant a confirmation for Contract 11218, which was signed and returned. (IDA Contract 11218, attached hereto as Exhibit B.)

11. As executed, Contract 11218 also contained an Agrivisor addendum that could result in a doubling up of deliverable bushels from 2,500 to 5,000 bushels if certain market pricing points were triggered. (Exhibit B.)

12. On or about March 25, 2021, IDA Farmers sent Defendant a letter indicating that several of Defendant's contracts were being transferred (assigned) to Plaintiff because Alan Peters ("Peters"), the grain merchandiser Defendant had been working with at IDA Farmers, was now employed by Plaintiff. (*See* March 25, 2021 letter, attached hereto as Exhibit C.)

13. IDA Farmers' March 25, 2021 letter also contained several contract adjustment notices documenting the transfer to Plaintiff. The contract amendments contained the notation "Transfer to Luckey." (Contract Amendments, attached hereto as Exhibit D.)

14. Defendant did not object to the contract assignments.

15. After Defendant's open grain contracts identified in the IDA Farmers' March 21, 2021 letter were assigned to Plaintiff, Defendant's wife on behalf of Defendant signed the Pricing Addendums with Plaintiff for the contracts that were referenced in the IDA Farmers' letter. (Pricing Addendums, attached hereto as Exhibit E.)

16. Plaintiff's Pricing Addendums contained a transaction number that matched up with the original IDA Farmers agreement.

17. IDA Farmers Contract 11114 was assigned a new Contract number of 49233 with Plaintiff.

18. IDA Farmers Contract 11218 was assigned a new Contract number of 50372 with Plaintiff.

19. During 2021, IDA Farmers confirmed with Plaintiff that a number of bushels assigned from IDA Farmers to Plaintiff were "open/to be Assigned."

20. Plaintiff's Contract 49098 represents an initial 2,500 bushels of soybeans allocated by Peters to Defendant, which was doubled to 5,000 bushels.

3

21. Plaintiff's Contract 49247 represents an initial 3,000 bushels of corn allocated by Peters to Defendant, which was doubled to 6,000 bushels.

22. On September 17, 2021, Plaintiff sent Defendant a letter containing all of Defendant's open contracts that had been assigned from IDA Farmers. (*See* September 17, 2021 letter attached hereto as Exhibit F.)

23. Plaintiff's September 17, 2021 letter requested Defendant notify Plaintiff if his records showed anything differing from what was contained within the letter. (Exhibit F.)

24. Defendant did not notify Plaintiff of any differences.

25. The four open contracts Defendant had with Plaintiff were numbered Luckey contracts 49233, 50372, 49098, and 49247.

26. The delivery date for Contract 49098 was rolled several times until a final delivery date of February 28, 2023 was established. (August 29, 2022 Contract Amendment, attached hereto as Exhibit G.)

27. The delivery date for Contract 49247 was rolled several times until a final delivery date of November 30, 2022 was established. (*See* August 29, 2022 Contract Amendment, attached hereto as Exhibit H.)

28. The delivery date for Contract 49233 was rolled several times with the final roll indicating delivery was to be made by November 30, 2022. (*See* August 29, 2022 Contract Amendment, attached hereto as Exhibit I.)

29. The delivery date for Contract 50372 was rolled several times with the final roll indicating delivery was to be made on the final 1,000 bushels by October 31, 2022. (*See* August 29, 2022 Contract Amendment, attached hereto as Exhibit J.)

30. On September 30, 2022, Defendant sent Plaintiff a letter that expressed Defendant's belief that his contracts with Plaintiff were not valid. (*See* Defendant's September 30, 2022, letter, attached hereto as Exhibit K.)

31. After receiving Defendant's September 30, 2022 letter, Plaintiff sent Defendant a response letter requesting Defendant provide assurances of performance on all open contracts Defendant had with Plaintiff. (*See* Plaintiff's October 10, 2022 letter, attached hereto as Exhibit L.)

32. Plaintiff requested Defendant provide the assurances of performance no later than 3:00 p.m. on October 14, 2022.

33. On October 12, 2022, Defendant responded to Plaintiff's request for assurance of performance by denying the existence of the remaining open grain contracts. (*See* Defendant's October 12, 2022 letter, attached hereto as Exhibit M.)

34. On October 18, 2022, Plaintiff responded to Defendant's October 12, 2022, letter explaining what contracts remained open with Plaintiff and how those contracts were initially executed. (*See* Plaintiff's October 18, 2022 letter attached hereto as Exhibit N.)

35. Defendant responded to Plaintiff's October 18, 2022, letter on October 22, 2022, again failing to provide assurances of performance of his open grain contracts. (*See* Defendant's October 22, 2022 letter, attached hereto as Exhibit O.)

36. On November 3, 2022, Plaintiff responded to Defendant's October 22, 2022, letter and again requested assurances of performance on open grain contracts no later than November 11, 2022. (*See* Plaintiff's November 3, 2022 letter, attached hereto as Exhibit P.)

37. Plaintiff did not receive a timely response to its November 3, 2022 letter, and cancelled Defendant's remaining open grain contracts on November 14, 2022.

38. Plaintiff invoiced Defendant $142,012.50 for damages associated with the cancelled contracts. (*See* Cancelled Contracts Invoice, attached hereto as Exhibit Q.)

39. Defendant has not paid Plaintiff for the grain contracts that were cancelled.

## FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

40. Plaintiff reincorporates the allegations of numbered paragraphs 1 through 39 herein as if fully restated.

41. Defendant repeatedly contested the validity of his open grain contracts with Plaintiff.

42. Defendant failed to provide the adequate assurances of performance requested within Plaintiff's November 3, 2022 letter.

43. Defendant's failure to timely respond to Plaintiff's November 3, 2022 request for assurances of performance constituted a repudiation of all his open grain contracts with Plaintiff.

44. As a result of Defendant's repudiation of his grain contracts, Plaintiff incurred $142,012.50 in market related damages.

**WHEREFORE**, Plaintiff Luckey Farmers, Inc. demands judgment against Defendant Glenn Berry in the amount of $142,012.50 plus interest, costs and attorney fees, and such other and further relief as shown by the evidence and/or to which Plaintiff is entitled.

6

Respectfully submitted,

*/s/ Troy A. Callicoat*
By: TROY A. CALLICOAT (0076279)
Trial Attorney
E-Mail: tcallicoat@ohiocounsel.com
DAVID C. BARRETT, JR. (0017273)
E-Mail: dbarrett@ohiocounsel.com
**BARRETT, EASTERDAY,
CUNNINGHAM & ESELGROTH LLP**
7259 Sawmill Road
Dublin, Ohio 43016
Telephone: 614-210-1840
Facsimile: 614-210-1841
Attorneys for Plaintiff Luckey Farmers, Inc.